# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Vernio and Kelli Gendron, | Civil No. 19-3024 (DWF/LIB) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Samuel Higgins, individually and in his official capacity as a Rochester Police Officer, | |
| Defendant. | |

Joshua A. Newville, Esq., and Samuel J. Kramer, Esq., Madia Law LLC, counsel for Plaintiffs.

Jason M. Hiveley, Esq. and Andrew A. Wolf, Esq., Iverson Reuvers Condon, counsel for Defendant.

## INTRODUCTION

This matter is before the Court upon Defendant Samuel Higgins' ("Defendant") Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Doc. No. 7.) Plaintiffs Michael Vernio ("Mr. Vernio") and Kelli Gendron ("Ms. Gendron") (together, "Plaintiffs") oppose Defendant's motion. (Doc. No. 14.) For the reasons set forth below, the Court denies Defendant's motion to dismiss.

## BACKGROUND

For purposes of this motion, the Court summarizes the factual allegations in the Complaint and the materials referenced and embraced by the Complaint.[1]

On August 19, 2019, Defendant responded to a call by Plaintiffs' neighbor complaining of barking dogs. (Compl. ¶¶ 7-8; *see also* Doc. 11-1.) Defendant began his investigation by walking onto the property of one of the Plaintiffs' neighbors.[2] (*Id.* ¶ 9.) Defendant then proceeded to the Plaintiffs' property. (*Id.* ¶ 10; Body Camera at 00:10-00:24.) Defendant walked past the front door of Plaintiffs' house. (*Id.*; Body Camera at 00:12-00:24.) Defendant then walked up Plaintiffs' driveway, past a side door to the house, and around a truck parked near the back of the driveway. (*Id.*; Body Camera at 00:24-00:34.) Defendant did not knock on either the front door or the side door. (*Id.* ¶ 39; Body Camera at 00:12-00:34.) Plaintiffs allege that the route Defendant took has no relation to a visitor's normal route of access to Plaintiffs' property. (*Id.*)

As Defendant advanced down the driveway, an above-ground pool was visible behind Plaintiffs' house. (Compl. ¶ 11; Body Camera at 00:31.) After Defendant passed the truck, he saw Ms. Gendron sitting near the garage and asked her where the barking

---

[1]   Defendant included two dispatch calls and a body camera video as exhibits to its Motion to Dismiss. (*See* Doc. No. 11.) The Court notes that the dispatch calls and body camera video are materials referenced and embraced by the complaint. (*See* Doc. No. 1 ("Compl."), ¶¶ 8, 11; *see also Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).)

[2]   Defendant wore a body camera during his investigation. (Compl. ¶ 11.) The content of the body camera was included as an exhibit to Defendant's motion. (*See* Doc. No. 11-4 ("Body Camera").)

dogs were and if the dogs belonged to her. (*Id*. ¶ 12; Body Camera at 00:34-00:40.) Defendant stated that "we were out here this morning and they couldn't find the dogs." (*Id*. ¶ 14; Body Camera at 02:24-02:27.) Shortly after, Mr. Vernio joined the conversation, (Body Camera at 02:28-34), and asked Defendant whether Rochester police officers "make a habit of just walking on private property" (Compl. ¶ 15; Body Camera at 03:56-03:59). Defendant replied, "when we're looking for a barking dog, which is a violation of the law, yes." (*Id*.; Body Camera at 03:59-04:03.) Defendant also stated that he "saw [Ms. Gendron] sitting back here." (*Id*. ¶ 16; Body Camera at 04:05-04:07.) Mr. Vernio stated that Defendant could not have seen Ms. Gendron sitting in the back corner of the property. (*Id*. ¶ 18; Body Camera at 04:07-04:11.)

Defendant replied, "I am investigating a crime. I can be on your property." (Compl. ¶ 19; Body Camera at 04:35-04:38.) Mr. Vernio responded that a barking dog was not a crime. (*Id*. ¶ 21; Body Camera at 04:39-04:41.) Subsequently, Defendant told Ms. Gendron "Ma'am, I'm gonna leave." (*Id*. ¶ 22; Body Camera at 05:04-05:06.) Mr. Vernio responded, "thank you," (*id*. ¶ 22; Body Camera at 05:06), but Defendant and Ms. Gendron continued their conversation, (*id*. ¶ 23; Body Camera at 05:06-06:19). Ms. Gendron explained her concern that the neighbors were harassing them by calling the police. (*Id*.; Body Camera ta 05:06-06:19.) During an extended conversation regarding the Plaintiffs' frustration with the neighbor's repeated calls, Mr. Vernio expressed his frustration with the fact that the neighbors had called the police about the barking dog rather than talking to Mr. Vernio about it. (*Id*. ¶ 28; Body Camera at 16:20-16:25.) Defendant speculated that this was because Mr. Vernio is "a very loud, boisterous black

3

man." (*Id*. ¶ 28; Body Camera at 16:25-16:33.)  Mr. Vernio subsequently stated that Defendant is a "white man with a gun, and I'm afraid." (Body Camera at 16:44-16:47.)  Defendant replied, "and you haven't been shot yet." (*Id*. at 16:51-16:52.)  Mr. Vernio gestured to Ms. Gendron and stated, "I've got a witness, that's why." (*Id*. at 16:53-16:54.)  Mr. Vernio laughed and asked if Defendant turned off his body camera. (*Id* at 16:55-16:59.)  Mr. Vernio replied, "I'm just playing." (Body Camera at 17:03-17:04.)

Following the interaction, Defendant left the Plaintiffs' property. (Compl. ¶ 32.) When Defendant returned to his car, he ran a search on the license plate number of the truck parked in the driveway. (*Id*.)

As a result of Defendant's conduct, Plaintiffs allege that they have been injured, including mental and emotional pain. (*Id*. ¶ 40.)  Plaintiffs seek an order declaring that Defendant's actions violated the Fourth Amendment and granting damages. (*Id*. at 13.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the

4

complaint, and exhibits attached to the complaint.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

**II.    Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  This "protection extends to the curtilage surrounding a home," *United States v. Weston*, 443 F.3d 661, 666 (8th Cir. 2006), which "is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes," *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L.Ed.2d 214 (1984) (citation and internal quotation marks omitted).  "[C]urtilage questions should be resolved with particular reference to four factors:  [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an

enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *U.S. v. Dunn*, 107 S. Ct. 1134, 1139 (1987); *accord United States v. Wells*, 648 F.3d 671, 677 (8th Cir. 2011) (applying four *Dunn* factors to determine that unpaved driveway past rear of a defendant's home and into his backyard was part of the home's curtilage).

Warrantless entry into the home or curtilage is presumptively unreasonable absent consent. *Kentucky v. King*, 563 U.S. 452, 460 (2011). Courts have found implied consent to enter curtilage pursuant to the "knock and talk" rule: "[N]o Fourth Amendment search occurs when police officers who enter private property restrict their areas to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways," for the purpose of making their presence known, making inquiries, or request consent to search. *Wells*, 648 F.3d at 679 (quoting *United States v. Reed*, 733 F.2d 492, 501 (8th Cir. 1984)). Such curtilage-entry based on an implied license is only permissible when accompanied by a "legitimate law enforcement objective," *United States v. Weston*, 443 F.3d 661, 671 (8th Cir. 2006), that is "unconnected with a search directed against the accused," *United States v. Anderson*, 552 F.2 1296, 1299-1300 (8th Cir. 1977).[3]

Assuming all facts in Plaintiffs' complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court concludes

---

[3] Warrantless entry into the home or curtilage may also be justified if there are exigent circumstances. *Wells*, 648 F.3d at 679. Defendant, however, does not argue that any such exigent circumstances existed.

that Plaintiffs have pled enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570.  First, the Court concludes that Plaintiffs' Complaint alleges sufficient facts, along with the reasonable inferences from those facts construed in the light most favorable to Plaintiffs, to plausibly claim that Defendant entered onto Plaintiffs' curtilage.  Plaintiffs allege that Defendant bypassed two doors, walked up the driveway, and walked around a truck parked near the back of the driveway.  The pictures included in Plaintiffs' Complaint, along with the body camera video submitted by Defendant, shows a pool behind Plaintiffs' house and along the path that Defendant walked.  Plaintiffs allege that Defendant's route has no relation to a visitor's normal route of access to Plaintiffs' house.  Accepting these facts as true, the Court concludes that Plaintiffs have pled enough facts to plausibly claim that Defendant entered an "area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver*, 466 U.S. at 180.

Second, the Court concludes that Plaintiffs' Complaint alleges sufficient facts, along with the reasonable inferences from those facts construed in the light most favorable to Plaintiffs, to plausibly allege that Defendant's entry onto Plaintiffs' curtilage did not fall within the knock-and-talk exception.  Plaintiffs allege that the Defendant failed to knock on either the front door or the side door.  Plaintiffs allege that Defendant instead walked up the Plaintiffs' driveway and around a truck parked in the driveway.  Again, Plaintiffs allege that Defendant's route has no relation to a visitor's normal route of access.  Accepting these facts as true, the Court concludes that Plaintiffs have pled sufficient facts to plausibly conclude that the Defendant's conduct fell outside of the

knock-and-talk exception either (1) when the Defendant failed to knock on the front door or the side door or (2) when the Defendant walked into the driveway-area past the side door that was not "generally made accessible to visitors." *Wells*, 648 F.3d at 679.

In so holding, the Court notes that it is not concluding, as a matter of law, that Defendant violated Plaintiffs' Fourth Amendment rights when Defendant failed to knock on either the front door or the side door. Rather, the Court concludes that even if Defendant had no obligation to knock on the front door or the side door as part of Defendant's "knock-and-talk," Plaintiffs have still properly asserted their claims on the basis of their factual allegations. The Court concludes that the Complaint contains factual support for Plaintiffs' cause of action sufficient to satisfy the requirements of *Twombly*. As such, Plaintiffs' claim must survive.

## CONCLUSION

For the reasons discussed above, the Court finds that Plaintiffs have alleged sufficient facts to state a plausible claim of a violation of their Fourth Amendment rights. In doing so, however, the Court did not need to address Defendant's specific comments to Mr. Vernio. The Court now addresses Defendant's comments.

As discussed above, when Mr. Vernio expressed frustration because his neighbors allegedly chose to call the police regarding barking dogs instead of speaking directly to Mr. Vernio, Defendant stated that it was because Mr. Vernio is "a very loud, boisterous black man." When Mr. Vernio subsequently responded that Defendant is a "white man with a gun, and I'm afraid," Defendant stated, "and you haven't been shot yet." In its briefing, Defendant argued that "[a]lthough Officer Higgins' comments could have been

8

more respectful and more artfully phrased, they are not relevant facts to Plaintiffs' claim under the Fourth Amendment." (Doc. No. 10 at 18.)

Regardless of whether Defendant's comments can provide the basis for a cause of action against Defendant—an issue the Court does not need to reach to decide this motion—the Court believes it cannot remain silent on the issue and that it is important to address Defendant's comments.

Defendant's comments were made on August 19, 2019. On August 9, 2014, Michael Brown, an 18-year-old African American man, was fatally shot by a police officer in Ferguson, Missouri. On July 6, 2016, Philando Castile, a 32-year-old African American man, was fatally shot by a police officer in Falcon Heights, Minnesota. Even before such high-profile shootings by police of African Americans, a comment—even joking—that infers that an African American man is fortunate to not have been shot "*yet*" by a police officer would be problematic. Such a comment ignores the historical context of law enforcement actions against African Americans. In the United States, African Americans are disproportionately subject to the use of force by law enforcement. Indeed, African Americans continue to be disproportionately killed by law enforcement officers. (*See Fatal Force*, the Washington Post, updated June 19, 2020, available at https://www.washingtonpost.com/graphics/investigations/police-shootings-database/.) It is this history of law enforcement's violent relationship with African Americans that makes it clear that allusions to the use of force by a police officer is no joking matter. Alone, this comment is a troubling statement that reflects a lack of respect for the value

9

of black lives.  When such a comment is added to an alleged Constitutional violation, the comment is even more problematic.

Given the recent events in Minnesota, Defendant's comments are particularly disturbing.  On May 25, 2020, George Floyd, a 46-year-old African American man was killed by a police officer in Minneapolis, Minnesota when the police officer knelt on Floyd's neck for seven minutes and forty-six seconds.  The death of Mr. Floyd has sparked protests of police brutality both domestically and internationally.  In view of current events, the Court finds it necessary to emphasize the wrongness of a police officer making stereotyped comments based on an individual's race (i.e., stating that Mr. Vernio is "a very loud, boisterous *black* man") or suggesting that a citizen should be fortunate that they have not been shot "*yet*."  Regardless of the final outcome of this case, the Court finds such comments to be, in the worst-case scenario, outright racist remarks and, in the best-case scenario, motivated by racial stereotypes.  The Court finds that the comments made by the officer, irrespective of how they are characterized, are entirely contrary to the constitutional promise of equal justice under law in the United States of America to which every citizen is entitled.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. [7]) is **DENIED**.

Dated:  June 29, 2020                             s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge